AGRICULTURE Under the provisions of 2 O.S. 1103 [2-1103] (1971), in order to be a member of the Oklahoma Peanut Growers Association, it is necessary to pay the Association One Dollar ($1.00) per net ten on a farmer's stock basis. However, a member may receive a refund on 300 bushels of peanuts without affecting his membership in the Association. Pursuant to 2 O.S. 1103 [2-1103] (1971), those growers who demand and receive a refund of assessment over and above the 300 bushel exemption are not eligible for membership in the Association. Therefore, such growers cannot be members and they cannot lawfully vote at the district meetings. Title 2 O.S. 1106 [2-1106] (1971), authorizes the Oklahoma Peanut Commission to contract with the Oklahoma Peanut Growers Association for the Association to conduct a campaign for promotion and education to inform Congress and the U.S.D.A. of the attitudes and desires of Oklahoma's growers concerning changes in the National Peanut Program. The Attorney General has considered your request for an opinion wherein you ask, in effect, the following questions: (1) In order to be a member of the Oklahoma Peanut Growers Association, is it necessary to pay the One Dollar ($1.00) per ton assessment? (2) Are growers who are in attendance at district meetings entitled to participate in elections if they request and receive refund of the One Dollar ($1.00) per ton assessment over and above the 300 bushel exemption ? (3) Can the Oklahoma Peanut Commission contract with the Oklahoma Peanut Growers Association for the Association to inform Congress and the U.S.D.A. of the attitudes and desires of Oklahoma's growers concerning changes in the National Peanut Program? Title 2 O.S. 1103 [2-1103] (1971), defines what constitutes membership in the Oklahoma Peanut Growers Association. That Section provides in pertinent part: "There is hereby created the Oklahoma Peanut Growers Association composed of all peanut growers paying the assessment provided in this act." The Oklahoma Supreme Court has declared: "The general rule is that all legislative enactments must be interpreted in accordance with their plain ordinary meaning according to the import of the language used." U.S. Dickey Clay Mfg. Co. v. Ferguson Investment Co., Inc., Okl., 388 P.2d 300, 304
(1963)- From a clear reading of the quoted language it is manifest that in order for one to claim membership in the Association two requirements must be met, to-wit: (1) that the member be a "grower" and (2) that the member pay the assessment "as provided in this act." "Grower" is defined under the Act at 2 O.S. 1102 [2-1102](2) (1971), as follows: " 'Grower' means any natural person engaged in growing peanuts." The "assessment" referred to in Section 1103 is the one authorized by 2 O.S. 1108 [2-1108] (1971). The assessment is levied upon all peanuts marketed in Oklahoma at the rate of One Dollar ($1.00) per net ton of peanuts on a farmer's stock basis. Payment of the assessment is accomplished by the first purchaser deducting the assessment from the purchase price. The purchaser then pays the Executive Secretary of the Commission the amount he has been credited. Each producer is entitled to a refund of the assessment, provided he files with the Executive Secretary of the Commission a written request for refund, together with evidence sufficient to substantiate his claim for refund, within 60 days from the date of sale to the first purchaser. Each producer is entitled to a 300 bushel exemption from assessment, provided he files a written request with the Commission for the refund. The characteristics of what constitutes assessment become clear through examination of the collection process outlined above. Since each producer is entitled to an exemption from assessment of 300 bushels of peanuts, that exempted portion is not "assessment" although a demand for refund is necessary. Assessment is that amount deducted by the first purchaser from the portion of the producer's stock marketed in Oklahoma which is not exempt by statute from assessment. It is also clear from the construction of the Act that any payment of assessment by the producer is at best indirect and is negated when the producer demands and receives from the Commission payment of the amount credited the first purchaser. Returning to the definition of membership in the Association found in Section 1103, and keeping in mind that assessment does not include the exempted portion, it is possible to state that members of the Association are those natural persons engaged in growing peanuts who market their products in Oklahoma and who do not demand and receive refund of assessment from the Commission. Therefore, the answer to your first question must be answered in the affirmative. It is necessary for membership in the Association that the members pay the assessment of One Dollar ($1.00) per net ton of peanuts on a farmer's stock basis. 2 O.S. 1103 [2-1103] also declares: "Each member present at such district meeting shall be entitled to one vote." Emphasis added) Clearly, in order to vote at the district meeting of the Association, it is required that one be a member of the Association. Therefore, the answer to your second question must be answered in the negative. Those growers who demand and receive refund of assessment are not eligible for membership in the Association. Consequently, such growers cannot be members and they cannot lawfully vote at the district meeting. Title 2 O.S. 1106 [2-1106] (1971), states in pertinent part: "In the administration of this act the commission shall have the following duties, authorities and powers: "(1) To conduct a campaign of research, promotion and education; ". . . "(5) to enter into such contracts as may be necessary or advisable for the purpose of this act; ". . . "(7) to cooperate with any organization or agency, whether voluntary or created by law or any state or by national law engaged in work or activities similar to the work and activities of such organizations or agencies for carrying on a joint campaign of research, promotion and education; ". . ." The Commission is authorized to conduct promotion campaigns under subsections (1) and (7). Title 2 O.S. 1107 [2-1107] (1971), states in pertinent part: ". . . The commission shall meet at least once every calendar quarter regularly and hold an annual meeting which shall be open to public discussion of policy and at which time the commission shall make its report to the Governor . . . ." (Emphasis added) 2 O.S. 1103 [2-1103] states: "Thereafter, a meeting shall be held annually by the Oklahoma Peanut Growers Association within each district at which all members in the district may attend and be present for the purpose of ascertaining the needs of the members within said district and determine whether or not the policies and activities of the commission are meeting those needs." (Emphasis added) It is evident that the Legislature when it contemplated the Okla homa Peanut Act intended that the Association and the Commission should meet at least once each year for the purpose of establishing and maintaining policy beneficial to the peanut growers in this State. It is reasonable that policy matters should be included within those matters which the Commission is empowered to promote. Promotion of the policy of the Commission concerning changes in the National Peanut Program before the Congress and U.S.D.A. is within the power of the Commission. The Commission is authorized to execute contracts under subsections (5) and (7). Under subsection (5), the Commission has authority to enter into contracts "necessary or advisable for the purpose of this act." Empowering the Commission to conduct promotion campaigns is within the purpose of the Act. Therefore, the Commission has authority under the Act to contract for the purpose of promotional campaigns. A promotional campaign to inform Congress and the U.S.D.A. of Oklahoma peanut growers' attitudes and desires concerning legislation affecting the National Peanut Program would come within the purview of this Section. Since the Commission has the power to contract for the purpose of conducting a promotional campaign, the Commission may contract with the Association to perform said purpose. Therefore, the answer to your third question must also be answered in the affirmative. The Oklahoma Peanut Commission may contract with the Oklahoma Peanut Growers Association for the Association to inform Congress and the U.S.D.A. of the attitudes and desires of Oklahoma's growers concerning changes in the National Peanut Program. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: Your first question is answered in the affirmative. Under the provisions of 2 O.S. 1103 [2-1103] (1971), in order to be a member of the Oklahoma Peanut Growers Association, it is necessary to pay the Association One Dollar ($1.00) per net ton on a farmer's stock basis. However, a member may receive a refund on 300 bushels of peanuts without affecting his membership in the Association. Your second question is answered in the negative. Pursuant to 2 O.S. 1103 [2-1103] (1971), those growers who demand and receive a refund of assessment over and above the 300 bushel exemption are not eligible for membership in the Association. Therefore, such growers cannot be members and they cannot lawfully vote at the district meetings. Your third question is answered in the affirmative. Title 2 O.S. 1106 [2-1106] (1971), authorizes the Oklahoma Peanut Commission to contract with the Oklahoma Peanut Growers Association for the Association to conduct a campaign for promotion and education to inform Congress and the U.S.D.A. of the attitudes and desires of Oklahoma's growers concerning changes in the National Peanut Program. (MARVIN C. EMERSON)